J. J. HARRIS & CO., INC., appellant, v. VINCENT L. BROWNER, city assessor of Des Moines, et al., appellees.

No. 51366.

(Reported in 130 N.W.2d 711)

OCTOBER 20, 1964.

Harvey Bogenrief, of Des Moines, for appellant.

Herrick, Langdon, Sandblom & Belin, of Des Moines, for appellees.

STUART, J.—Appellant is a corporation organized under the Iowa Business Corporation Act. It is a registered specialist in the stock exchanges in New York City. All of its business is conducted in its offices there and on the floor of the stock exchanges. None of its assets have ever been located in Iowa and none of its officers, directors or stockholders have been in Iowa since its incorporation. It maintains a registered office in Des Moines and has designated a registered agent as required by statute. It transacts no business through that office or in Iowa. No records are kept at the registered office.

The Des Moines assessor assessed its capital stock under section 431.1 of the Code for the years 1960, 1961 and 1962. The taxes were paid under protest. The district court affirmed the assessment and dismissed the corporation's petition. It has appealed to this court.

The question presented here is whether a corporation organized under the provisions of chapter 496A, Code of Iowa, which conducts all of its business outside the State of Iowa and maintains only the statutory registered office here, is required to pay moneys and credits tax upon its corporate stock under section 431.1 of the Code, which provides in part:

"Shares of stock. The shares of stock of any corporation organized under the laws of this state * * * shall be assessed to the owners thereof as moneys and credits at the place where its principal business is transacted. * * *."

Stock of corporations organized under the old corporation Act, chapter 491 of the Code, has been taxed under this statute even though the corporation did not, in fact, conduct any of its business in Iowa. Koochiching Co. v. Mitchell, 186 Iowa 1216, 1221, 173 N.W. 151. We say: "The statute regulating the incorporation of private companies makes it mandatory that each shall, in its articles, designate its principal place of business; and having done so, it does not lie in the mouth of the company to say that a statutory duty required to be performed at that place is avoided because it has chosen to invest its money and exercise its principal corporate powers in another jurisdiction."

The designation of the principal place of business in the articles was also held to be controlling in determining the place

of assessment between counties, Iowa Limestone Co. v. Cook, 211 Iowa 534, 233 N.W. 682; and in deciding proper venue. State ex rel. Northwestern Land and Colonization Co. v. District Court of Winnebago County, 191 Iowa 244, 182 N.W. 211.

The difficulty arises under chapter 496A because it does not require a corporation to designate a principal place of business in the articles, nor was such place designated voluntarily by appellant. This requirement was replaced by section 496A.11 which provides:

"Each corporation shall have and continuously maintain in this state:

"1. A registered office which may be, but need not be, the same as its place of business.

"2. A registered agent or agents who may be either an individual or individuals resident in this state, the business office of whom shall be identical with such registered office, or a domestic corporation, or a foreign corporation authorized to transact business in this state, having a business office identical with such registered office.

"In addition to all other statutory provisions relating to venue, an action may be brought against any corporation in the county where its registered office is maintained or, if a corporation fails to maintain a registered office in this state, then in any county within the state."

The draftsman of the Act anticipated our problem in his comments following 496A.11 in which he states:

"Since these taxing statutes [Code sections 428.11 and 431.1] were not amended at the time the Iowa Business Corporation Act was enacted and since under the Act articles of incorporation usually do not designate a principal place of business as such, the question arises as to how the term principal place of business is to be construed as it applies to such corporations organized under new law. One possible answer to the question would be that the term principal place of business as to such corporations now applies to what is actually the place of the corporation's principal business activities without regard to the location of the registered office as stated in the articles. Another possible answer would be that as to corporations existing under

the new law, principal place of business now means registered office for purposes of tax jurisdiction even though the legislature did not so amend the law. In actual practice taxing authorities seem to be adopting the latter alternative." 28A I. C. A. 147.

The second answer suggested above is the position urged by the assessor and accepted by the trial court. The corporation's "registered office" was considered to be the "place where its principal business is transacted" even though it is conceded that no business of any kind in fact is transacted there. This fiction was properly applied to chapter 491 because the taxing statute was clearly aimed at just such a situation. The terms used were almost identical. Can we now properly extend this fiction to a new chapter of the Code in which an entirely different phrase is used although, in at least some respects, its purpose is the same? We think not.

"Principal place of business" has been defined by the courts of many jurisdictions in cases involving questions of residence, venue and taxing authority. In most instances it has been treated as a question of fact "to be determined in each particular case by taking into consideration such factors as the character of the corporation, its purposes, the kind of business in which it is engaged, and the situs of its operations." Colorado Interstate Gas Co. v. Federal Power Commission, 142 F.2d 943, 951. See also Milwaukee Steamship Co. v. City of Milwaukee, 83 Wis. 590, 53 N.W. 839, 841, 18 L. R. A. 353; State ex rel. Willamette Nat. Lbr. Co. v. Circuit Court for Multnomah County, 187 Ore. 591, 211 P.2d 994, 1004; Meyers v. Lux, 76 S. D. 182, 75 N.W.2d 533; Reeves v. Coldway Carriers, Inc., Ky., 240 S.W.2d 47.

The Federal Courts discussed the term in Kelly v. United States Steel Corporation, 284 F.2d 850, 852, in considering the statute dealing with grounds of diversity of citizenship, which stated: " '* * * a corporation shall be deemed a citizen of any State by which it has been incorporated and of the State where it has its principal place of business'." The court said: "In some instances the answer will be easy. The simplest case is probably that of a corporation which gets a charter in one state but carries on all its business operations in another state. Obviously, in such a case the connection with the state of

charter is nominal and the principal place of business is where the corporate activity is carried on." .

 In the absence of a statute which requires the principal place of business to be stated in the articles of incorporation as in the Koochiching case, it is a question of fact to be determined in each case. The use of the term "registered office" is not equivalent to the designation of "principal place of business". Appellee argues that it serves the same purpose, but it seems clear the legislature did not consider them to be synonymous. Section 496A.11 which provides for a registered office states that it "may be, but need not be, the same as its place of business", thus, specifically recognizing that "registered office" and place of business are not the same thing.

Pennsylvania and the District of Columbia have statutes similar to 496A.11. In Murphy v. Washington American League Base Ball Club, 167 F. Supp. 215, 219, the statute was discussed in a suit to determine if the baseball franchise could be moved out of Washington, D. C. (Other statutes provided no corporation could be organized "unless the place where it conducts its principal business is located within Washington, D. C.") The court said: "This indicates, in connection with continuity of operations in the District of Columbia, that Congress intended only that the registered office and registered agent remain in the District of Columbia, and did not require that they be at its place of business, which would imply, so far as events after organization are concerned, that the place of business might be elsewhere than the District of Columbia."

In Ruby v. Penn Fibre Board Corporation, 326 Pa. 582, 585, 192 A. 914, 915, the court held "the term 'registered office' as identical with the term 'place where its business is to be transacted'" used in a prior Act and distinguished the terms from "place of business". "Registered office" was held to mean the place where the internal corporation matters were carried on and its books kept. "Place of business" was held to relate to commercial activities. It is distinguished from the instant case because a Pennsylvania case under the old statute had defined "place * * * where its business is to be transacted" as the place where the "corporate functions are to be performed". The new

Act also required the corporate records to be kept at the "registered office". There is no such requirement under the Iowa statute and the records are in fact kept in New York. The court did hold that the corporation's "principal place of business" was in New York where its commercial operations were carried on, not in Pennsylvania where its records and registered office was located.

The trial court emphasized the legislative intention and concluded that the legislature did not intend "to create a vehicle whereby nonresidents escape taxation, not only in Iowa, but also at the place where they contend the principal business of the corporation is transacted." There is very little outside the language of the statute itself to aid us in arriving at the legislative intent. While it may be logical to conclude the legislature did not intend to provide a tax loophole for corporations such as this, it seems equally logical to conclude it was done deliberately as an added inducement for corporations to incorporate here which would not otherwise have any Iowa connection. Either conclusion is speculation.

■ "The intent of the legislature which is controlling is to be gathered from the statute itself. It is our duty to give it the interpretation its language calls for and not to speculate as to probable legislative intent apart from the wording used. ' "We do not inquire what the legislature meant. We ask only what the statute means." ' " Ashby v. School Township of Liberty, 250 Iowa 1201, 1214, 98 N.W.2d 848, 857; Lever Brothers Co. v. Erbe, 249 Iowa 454, 469, 87 N.W.2d 469, 479.

■ There is no reference whatsoever to the taxing statute 431.1. The draftsman makes no reference to the situs for tax purposes in his explanation of the purpose of section 496A.11 in which he says:

"The purpose of this section is to make sure that every domestic corporation organized under the Iowa Business Corporation Act will have in the state at all times a process agent, called a registered agent, on whom any process, notice or demand may be served on behalf of the corporation. One of the notable shortcomings of the old law was its failure to require the appointment of such agent." 28A I. C. A. 145.

If the legislature had desired to tax the capital stock of corporations organized under 496A of the Code, they certainly had the power to do so as a condition for the right to incorporate in Iowa. Koochiching Co. v. Mitchell, 186 Iowa 1216, 1221, 173 N.W. 151. We cannot assume failure to do so was an oversight and attempt to remedy it by giving a strained construction to the statute.

The construction urged by appellee would necessarily result in further problems of construction. An example is the situation in which a corporation maintains a registered office in one county of the state and transacts all of its business in another county. Is the stock then to be assessed in the county of incorporation or in the county where the business is carried on? The draftsman says:

"Still another problem of construction of these assessment statutes would arise in the case of a corporation existing under the Iowa Business Corporation Act if its articles of incorporation named a place in one taxing district as its registered office, and a place in another taxing district as its principal place of business. Although the new law does not call for the articles to name a principal place of business, articles of incorporation which do so are accepted by the Secretary of State. If the court upholds what apparently may become established administrative practice and carries it to its logical conclusion, the result would be that principal place of business as used in sections 428.11 and 431.1 means registered office as designated in articles of incorporation filed under the new law, and that a principal place of business which might be named in such articles, if different from the registered office, is not the principal place of business within the meaning of these assessment statutes." 28A I. C. A. 147, 148.

On the other hand appellee who also recognizes the incongruity which is created suggests that the taxes be levied in the county where the registered office is maintained if there is no principal place of business in fact in Iowa, but that they should be levied at the principal place of business if there is one.

The statutes as they now appear do not justify either interpretation. The difficulty can be avoided if we give "principal

place of business" its commonly accepted meaning and decide the location as a matter of fact. If the legislature desires to tax the corporate stock at the location of the registered office, a simple amendment to section 431.1 so stating would make the intention clear.

The attorney general reached the same conclusions as we reach here in his opinion dated January 15, 1963:

"It is our opinion that the controlling statute for assessment of stock is Section 431.1, whether or not the corporation is organized under Chapter 491 or Chapter 496A. The requirements found in these chapters are to establish a record with the Secretary of State for purposes of organizing and incorporating a business activity. However, the place of assessment of the shares of stock of these incorporated business activities is a different problem from their registration under either section of the Code of Iowa. This problem is met by Section 431.1, requiring the shares to be assessed and taxed at the principal place of business. For corporations organized under Chapter 491, the principal place of business is that which is stated in its articles of incorporation (Koochiching Co. v. Mitchell, 186 Iowa 1216; Iowa Limestone Co. v. Cook, 211 Iowa 534), and for corporations organized under Chapter 496A, the principal place of business is that place which is in fact the principal place of business and which must be determined by the assessor, depending on the nature of the business subject to assessment. Reference to the articles of incorporation of a Chapter 496A company will not disclose its principal place of business since this information is not required by the statute."

The assessor relies to some extent upon stockholders agreements and a corporation annual report in which the corporation interchanged the phrase "principal place of business" with "registered office". These are explained as "boners". This case does not turn upon the intention or understanding of the corporation, but is a question of statutory interpretation. As we have held the stock is taxable at the place where the corporation business is actually transacted under the statute and as it is conceded the corporation transacted no business in Iowa, the interchange of phrases is of no significance.

In view of our holding that the capital stock of the appellant is not assessable in Iowa, we need not consider other questions raised on appeal which relate to the propriety of including certain intangible items in determining the value of the capital stock.—Reversed.

All JUSTICES concur except HAYS, J., not sitting.